84 So.2d 653

Ex parte **BOARD OF EDUCATION OF BLOUNT COUNTY et al.**

6 Div. 962.

Supreme Court of Alabama.

Nov. 28, 1955.

Rehearing Denied Jan. 12, 1956.

St. John & St. John, Cullman, for petitioners.

**36**

Johnson & Randall, Oneonta, for respondent.

SIMPSON, Justice.

This is an original proceeding seeking a writ of prohibition, mandamus or other appropriate remedial writ, by which to stay proceedings in the circuit court of Blount County on a petition for alternative writ of mandamus styled State ex rel. Amos A. Stewart et al., Case No. 3339, and to dismiss said petition for mandamus.

Patrons of the Blount County schools brought their petition for an alternate writ of mandamus in the circuit court seeking to vacate and annul a resolution of the Blount County Board of Education passed July 21, 1955. This resolution so altered the routes of county school buses as to prevent attendance of patrons' children in the city schools of Oneonta and thereby render of no effect a ruling of the State Superintendent of Education (decided in 1954 and reaffirmed in 1955 by the present Superintendent) as to a transportation controversy between the City and County School Boards. The ruling was evoked from the Superintendent under the provisions of § 163, Title 52, Code 1940.

On consideration of the patrons' petition for an alternate writ of mandamus, the circuit judge (respondent here) issued a rule nisi.

Petitioners here sought and obtained from this court a rule nisi on a writ of prohibition. We are now asked to grant that writ and to order the petition for mandamus to be dismissed on the ground that the circuit court of Blount County is without jurisdiction to entertain the petition of school patrons against their Board of Education as presented by mandamus.

We note that the act complained of in the patrons' petition for mandamus—the Board's resolution of July 21st—occurred prior to the passage of Act 201, Regular Session, 1955 Acts (commonly known as the Placement Act, which repealed said § 163, supra, and other sections of the School Code). As the school laws were written at the time of the resolution, we had decided that a patron's remedy against his school board for enforcement of a public duty lay in mandamus. Board of Education of Jefferson County v. State, 222 Ala. 70, 131 So. 239.

However, we also note that the patrons' petition was not presented until September —i. e., subsequent to the effective date of the Placement Act, August 3, 1955.

In our view, at the time the circuit court took jurisdiction of the controversy the law providing the method for testing ac-

tions of local school boards was that specified in Act 201. Harlan v. State, 31 Ala. App. 478, 18 So.2d 744; Evers v. State, 32 Ala.App. 84, 21 So.2d 706. And with the repeal of said § 163 the prior order of the State Superintendent of Education became functus officio.

Act 201 provides, in part:

"Section 7. A parent or guardian of a pupil may file in writing with the local Board objections to the assignment of the pupil to a particular school, or may request by petition in writing assignment or transfer to a designated school or to another school to be designated by the Board. Unless a hearing is requested, the Board shall act upon the same within 30 days, stating its conclusion. If a hearing is requested the same shall be held beginning within 30 days from receipt by the Board of the objection or petition, at a time and place within the school district designated by the Board.

\*  \*  \*  \*  \*  \*

"Section 9. The action of the Board shall be final except that in the event that the pupil or the parent or guardian, if any, of any minor or, if none, of the custodian of any such minor shall, as next friend, file exception before such Board to the final action of the Board as constituting a denial of any right of such minor guaranteed under the Constitution of the United States, and the Board shall not, within fifteen days reconsider its final action, an appeal may be taken from the final action of the Board, on that ground alone, to the Circuit Court in Equity of the Judicial Circuit in which the School Board is located, by filing with the Register within thirty days from the date of the Board's final decision a petition stating the facts relevant to such pupil as bearing on the alleged denial of his rights under the Constitution, accompanied by bond with sureties approved by the Register, conditioned to pay all costs of appeal if the same shall not be sustained.

\*  \*  \*  \*  \*  \*

"Section 10. Sections 56, 93, 163, 167, 318 and 319 of Title 52 of the Code of Alabama of 1940 are hereby repealed."

Since mandamus is an extraordinary remedy to be relied on only where there is no adequate remedy, we entertain the opinion that under the circumstances disclosed it was used improperly by the patrons to test the action of the school board. State ex rel. Holcombe v. Stone, 232 Ala. 16, 166 So. 602. Said Act 201, § 9, provides a method of appeal and review which until tested must be deemed adequate. When tested, should it be found inadequate, then an extraordinary remedy may again be demanded. It is noted that said § 9 limits the right of appeal to a determination of whether any constitutional right guaranteed under the federal constitution has been violated. But the case before us does not require a discussion of this statutory appeal. The said Act 201 provides for certain preliminary steps, the filing of objection before the board, etc., which the patrons in the instant case did not pursue. Hence they have not exhausted their remedy provided by the act and the proceedings show on their face that the trial court was without jurisdiction to issue the rule nisi.

We leave undecided the question of whether mandamus or other extraordinary remedy will lie where the provisions of said act have been exhausted without providing an adequate remedy, such as where a board has committed a gross abuse of discretion or has acted arbitrarily on a controversy which does not rise to the appealable status mentioned in said § 9 (infringement of a constitutional right). That question is not presented by this proceeding.

It results that the circuit court has no jurisdiction to entertain the petition of mandamus presented by the patrons and the writ of prohibition should issue.

■ It is true as contended by the respondent judge that as a general proposition he does have the duty of determining

his own jurisdiction under the accepted principle that every court of general jurisdiction has the judicial power to determine the question of its own jurisdiction. Ex parte Textile Workers Union of America, 249 Ala. 136, 30 So.2d 247.

And as a general rule a writ of prohibition will not issue to an inferior court unless lack of jurisdiction has been brought to the attention of that court and a ruling on the question invoked. Donahoo v. St. John, 253 Ala. 604, 46 So.2d 420. But as observed in the last-cited case:

"* * * there are recognized qualifications or exceptions to this general rule. It is declared by a majority of the courts that the rule that the matter must first be brought to the attention of the inferior court for a ruling as a predicate for the issuance of the writ is not rigid or arbitrary in its application, but is a rule of courtesy to be applied in the discretion of the superior court, on the principle that the matter of judicial courtesy should yield to substantial personal rights of litigants. 42 Am.Jur. 173, § 39; Ex parte State ex rel. Knight, 229 Ala. 513, 158 So. 317, citing 50 C.J., § 98, p. 697. An illuminating annotation appears in 35 A.L.R. 1090 et seq.

"This court has recognized one such qualification or exception where it is apparent that objection to jurisdiction would have been unavailing or would result in unnecessary or hurtful delay, or where applicant for the writ had no opportunity to object. * * *" 253 Ala. 606, 46 So.2d 422.

The instant case falls within the last-stated principle because it appears from the answer of the respondent judge that he is contending that he does have jurisdiction and hence a challenge before him of his jurisdiction would have been unavailing. See also Ex parte Textile Workers Union of America, supra.

Writ of prohibition granted.

LIVINGSTON, C. J., and GOODWYN and MAYFIELD, JJ., concur.

On Rehearing.

SIMPSON, Justice.

Respondent contends that enactment of the placement bill froze every student in the school he had been attending previously, and further that local boards are thereafter prohibited from transferring any student or group of students without a finding by the board or its authority that such transfer is as to each individual pupil consistent with the test of the public and educational policy governing the admission and placement of pupils in the public school system prescribed by the act.

We are of the opinion that respondent is mistaken only in his original premise: the Act was one designed to give the public school system flexibility, not rigidity; thus it did not so freeze pupils to their schools. Rather, it gave the local board full authority to place and replace students within its jurisdiction. The primary purpose of the Act was to fix responsibility for placement; the method chosen was the granting of wide discretionary powers to the local school board.

In seeking the legislative intent, we note from the House Journal that Act 201 as adopted was a substitute bill. When originally introduced as H.B. 296 it sought to create a placement board in each school district and empower that board to review school attendance rolls for placement of pupils. A comparative reading of Act 201 reveals that this provision was omitted; review of school rolls is not mentioned. The Act provides for the local board to determine pupil placement based on its own findings.

The Act as a whole must be construed as a broadening of the powers of local school boards because of its repeal of restrictive Code sections; viz., §§ 56, 93, 163, 167, 318, and 319 of Title 52, 1940 Code. Further, the Act in § 4 contemplates that the board shall possess full authority within its own district. It is inconceivable that one board may have juris-

diction within the district of another except with the consent of the home board. Thus the provisions for pupils' attendance of school outside their home district we deem to be permissive. Hence the withdrawal of county children from a city school by the county board does not, in our view, constitute a violation of the spirit of the Act, nor does it prima facie show an overstepping of the board's authority. The requirement for such act is that the board base its action on findings that such transfer or placement is as to each individual pupil consistent with tests of the public and educational policy prescribed by the Act, viz.: (§ 4)

> " * * * In the assignment, transfer or continuance of pupils among and within the schools, or within the classroom and other facilities thereof, the following factors and the effect or results thereof shall be considered, with respect to the individual pupil, as well as other relevant matters: Available room and teaching capacity in the various schools; the availability of transportation facilities; the effect of the admission of new pupils upon established or proposed academic programs; the suitability of established curricula for particular pupils; the adequacy of the pupil's academic preparation for admission to a particular school and curriculum; the scholastic aptitude and relative intelligence or mental energy or ability of the pupil; * * *" etc.

Until tested by the objection and appeal of a pupil's parent or guardian as prescribed by the Act, we are unwilling to say that the board has in the instance before us acted without the necessary preliminary findings.

Application overruled.

LIVINGSTON, C. J., and GOODWYN and MAYFIELD, JJ., concur.