Christopher Brian McClellan sued SouthTrust Securities, Inc. ("SouthTrust"), and one of its officers, Thomas A. Comer, seeking compensatory and punitive damages, based on allegations of fraud, deceit, and suppression. Specifically, McClellan alleged that SouthTrust and Comer had made false preemployment representations to him that induced him to leave his former employer and become an employee of SouthTrust. SouthTrust and Comer moved to compel arbitration of McClellan's claims, arguing that McClellan had voluntarily entered into an agreement that obligated him to arbitrate all claims that arose out of his employment with SouthTrust. The trial court denied the motion. SouthTrust and Comer appealed that denial. Because we conclude that McClellan agreed to arbitrate all claims arising out of his employment and that McClellan's claims against SouthTrust and Comer arise out of his employment with SouthTrust, we reverse and remand.
 I.
In January 1996, McClellan, a full-service stock broker employed by Morgan, Keegan Company ("Morgan Keegan"), had several meetings and conversations with Comer, an officer of SouthTrust, regarding potential employment with SouthTrust. McClellan alleges that during these discussions Comer misrepresented the nature of investment options McClellan could offer his clients if he accepted employment with SouthTrust. McClellan alleges that in February 1996, relying on Comer's misrepresentations, he terminated his employment with Morgan Keegan and became an employee of SouthTrust. In connection with his employment with SouthTrust, McClellan completed and signed a "Uniform Application for Securities Industry Registration or Transfer" (the "U-4"). By signing the U-4, McClellan agreed, among other things, to arbitrate any dispute with SouthTrust or its employees "arising out of [his] employment" with SouthTrust.
In December 1997, McClellan sued SouthTrust and Comer, seeking compensatory and punitive damages based on allegations of fraud, deceit, and suppression. Specifically, McClellan's complaint asserted that SouthTrust and Comer had fraudulently induced him to leave his employment with Morgan Keegan by misrepresenting the kind of brokerage activity he would be permitted to engage in while employed with SouthTrust. SouthTrust and Comer moved to compel arbitration of McClellan's claims, arguing that the claims arose out of his employment with SouthTrust and were, therefore, subject to the arbitration agreement in the U-4. The trial court denied the motion, holding "that there was and is no dispute as to matters concerning or arising out of [McClellan's] job or performance."
 II.
Section 2 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1
et seq., provides that "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable."9 U.S.C. § 2.[1] Accordingly, trial courts are required to stay or dismiss proceedings and to compel arbitration when *Page 622 
it is shown the parties to a lawsuit have entered into a valid contract containing an arbitration agreement. Moreover, the Supreme Court of the United States has stated that the FAA establishes a strong federal policy favoring arbitration:
 "The [Federal] Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability."
Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1,24-25 (1983). These principles provide the framework within which we must determine whether the trial court erred in denying SouthTrust's motion to compel arbitration of McClellan's claims.
McClellan was an at-will employee of SouthTrust. Upon accepting the employment with SouthTrust, McClellan filled out and signed the U-4, which stated in pertinent part:
 "I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of the organizations in Item 10 as may be amended from time to time and that any arbitration award rendered against me may be entered as a judgment in any court of competent jurisdiction."
(Emphasis added.) One of the organizations listed in Item 10 was the National Association of Securities Dealers ("NASD"). The NASD "Code of Arbitration" requires brokers to arbitrate:
 "Any dispute, claim, or controversy . . . between or among members and/or associated persons and/or certain others, arising in connection with the business of such member(s) or in connection with the activities of such associated person(s), or arising out of the employment or termination of employment of such associated person(s) with such members . . . ."
(Emphasis added.)
SouthTrust contends that the fraud claimed by McClellan "arises" out of his employment by SouthTrust. McClellan responds with the argument that because the alleged fraud occurred before he was employed with SouthTrust, it could not "arise out of [his] employment."
The key to this case is the interpretation of the phrase "arising out of . . . employment." The United States Supreme Court has stated that courts must construe arbitration agreements broadly, resolving all doubts in favor of arbitration. Moses H.Cone Mem'l Hosp., 460 U.S. at 24-25. A broad construction of the term "employment" is particularly appropriate in this case, given the precedents of the Supreme Court of the United States strongly advancing arbitration of all disputes related to the securities industry. See Rodriguez de Quijas v. Shearson/American Express,Inc., 490 U.S. 477 (1989) (holding that claims under the Securities Act of 1933 were arbitrable under a predispute arbitration agreement); Shearson/American Express, Inc. v.McMahon, 482 U.S. 220 (1987) (holding that claims under § 10b of the Securities Exchange Act of 1934 were arbitrable under a predispute arbitration agreement).
Broadly construed, the term "employment" includes not only the actual contractual relationship of employment, but also the hiring process, that is, the act of employing. Merriam-Webster'sCollegiate Dictionary 379 (10th ed. 1997) (defining "employment" to include, among other things, "the act of employing"). Such a construction is consistent with the federal courts' willingness in arbitration cases to look to the type of relationship described in the arbitration clause without limiting it to a contractual relationship. See generally, Zink v. Merrill Lynch Pierce Fenner Smith, Inc., 13 F.3d 330, 333 (10th Cir. 1993) (requiring arbitration of a customer's claims against a brokerage firm even though the contested transaction predated the execution of the arbitration agreement, which provided for the arbitration of "any *Page 623 
controversy . . . arising out of your business or this agreement").
Accordingly, we hold that McClellan's claims that SouthTrust and Comer made misrepresentations to him during the hiring process arise out of his employment with SouthTrust and are, therefore, subject to the arbitration agreement in the U-4.
 III.
The trial court improperly denied the motion to compel arbitration. We reverse the order denying arbitration and remand the cause for further proceedings not inconsistent with this opinion.
REVERSED AND REMANDED
Hooper, C.J., and Maddox, Houston, Lyons, and Brown, JJ., concur.
Kennedy and Johnstone, JJ., dissent.
[1] Neither party has alleged that the transaction did not involve interstate commerce. See Allied-Bruce Terminix Companiesv. Dobson, 513 U.S. 265 (1995) (holding that all arbitration provisions dealing with transactions involving interstate commerce are subject to the FAA).