This is an arbitration case.
Thompson Tractor Company, Inc. ("Thompson"), entered contracts over a period of years with Fair Contracting Company, Inc. ("Fair"), by which Thompson rented equipment to Fair. Rental contracts entered by those parties during the period 1997 to 1999 generally contained agreements to arbitrate disputes. Rental contracts entered during the period 1995 to 1996 had not contained arbitration agreements. The arbitration agreements provided for arbitration of disputes between these parties arising out of "any prior negotiations or dealings" between them. Fair sued Thompson, stating claims related to the rental contracts. The trial court denied the defendant Thompson's motion to compel arbitration of Fair's claims. Thompson appealed. The question here is whether the arbitration agreements in the later rental contracts require Fair to arbitrate its claims based on the earlier rental contracts. We conclude that they do. Therefore, we reverse the order denying the motion to compel arbitration and remand.
Fair filed a purported class action seeking damages from Thompson on theories of breach of contract, unjust enrichment, and assumpsit, alleging that Fair and other members of the putative class ("the class") had rented construction equipment from Thompson, and that Thompson had improperly passed along to Fair and the *Page 398 
class the Alabama Rental Tax[1] that Thompson paid to the State of Alabama on the rentals. Thompson filed a motion to compel arbitration, based upon the arbitration agreements in Thompson's rental agreements with Fair and the class from 1997 to 1999. Fair amended the complaint to assert only claims arising out of the rental agreements entered into by the parties in 1995, 1996, and on unknown later dates, that did not contain arbitration clauses. By affidavit of Ford Williams, the president of Fair, Fair introduced lease agreements with Thompson that were executed before June 7, 1996, which did not contain arbitration clauses. By affidavits of Tom McGough, vice president of Thompson, Thompson introduced lease agreements with Fair that were executed after June 7, 1996, with the latest one being dated March 22, 1999 (more than five months after the complaint was filed), which did contain arbitration clauses. Those arbitration clauses were in all relevant parts identical to the arbitration clause quoted later in this opinion. The trial court denied Thompson's motion to compel arbitration. Thompson appealed.
An appeal is the proper method of challenging a trial court's order refusing to compel arbitration. A.G. Edwards Sons, Inc.v. Clark, 558 So.2d 358, 360 (Ala. 1990).
This case presents a question of law. Our review is "de novo." See Patrick Home Center, Inc. v. Karr, 730 So.2d 1171
(Ala. 1999).
The scope of the disputes embraced by an arbitration clause is a matter of contract interpretation. Allied-Bruce TerminixCompanies, Inc. v. Dobson, 684 So.2d 102, 107 (Ala. 1995). When dealing with an unambiguous arbitration clause, the court will determine the parties' intent at the time the contract was executed by analyzing the plain language of the arbitration clause. Coastal Ford, Inc. v. Kidder, 694 So.2d 1285, 1288 (Ala. 1997). "`[I]f in its terms a contract is plain and free from ambiguity, then there is no room for construction and it is the duty of the court to enforce it as written.'" Ex parte ConferenceAmerica, Inc., 713 So.2d 953, 956 (Ala. 1998), quoting Ex parteSouth Carolina Ins. Co., 683 So.2d 987, 989 (Ala. 1996).
The arbitration provisions in the 1997-99 leases between Thompson and Fair provide as follows:
 "20. Arbitration and waiver of jury trial. Lessee and Lessor acknowledge and agree that the transaction between them involves `commerce' as that term is used in the Federal Arbitration Act (`FAA'), 9 U.S.C. § 1. Lessee and Lessor agree that all disputes, controversies and claims of any kind and character *Page 399 
whatsoever . . . arising out of or related to this Lease, the Equipment, the transactions evidenced or contemplated by this Lease, any prior negotiations or dealings between Lessee and Lessor, or any maintenance or service performed by Lessor on the Equipment or on any other related or unrelated property before, on, or after the date of this Lease, whether based in tort, contract, warranty, or statutory or strict liability, shall be submitted to binding arbitration under the FAA in Birmingham, Alabama, administered by the American Arbitration Association in accordance with its Commercial Arbitration Rules. . . . The parties hereby waive the right to trial by jury of all disputes, controversies and claims which they have hereby agreed will be resolved by arbitration whether the dispute, claim or controversy is submitted to arbitration or is decided by a court."
(Bold-print emphasis original; other emphasis added.)
Fair contends that the language in the arbitration clause applies to the specific lease or transactions contemplated by the specific lease contract, pointing out that on more than one occasion the arbitration clause refers to "this lease." Thus, it argues, each lease contract stands alone.
Thompson contends that Fair and Thompson agreed to arbitrate "all disputes, controversies and claims of any kind and character whatsoever . . ., whether based in tort, contract, warranty, or statutory or strict liability," that arose out of or related to any of the following subjects:
(1) "this Lease";
 (2) "the Equipment [that was the subject of the Lease]";
 (3) "the transactions evidenced or contemplated by this Lease";
 (4) "any prior negotiations or dealings between [Fair] and [Thompson]";
 (5) "any maintenance or service performed by [Thompson] on the Equipment"; and
 (6) "any maintenance or service performed by [Thompson] . . . on any other related or unrelated property before, on, or after the date of this Lease."
Thompson contends that item (4) is not limited to "this Lease." By the clear terms of the arbitration clause, it is not. Fair and Thompson agree to arbitrate "all disputes, controversies and claims of any kind and character whatsoever . . . arising out of or related to . . . any prior negotiations or dealings between [Fair] and [Thompson]."
When an arbitration clause clearly indicates that disputes related to prior transactions are to be arbitrated, those disputes must be arbitrated when one of the parties to the transaction demands arbitration. Merrill Lynch, Pierce, Fenner Smith, Inc.v. Kirton, 719 So.2d 201 (Ala. 1998). See also Merrill Lynch,Pierce, Fenner Smith, Inc. v. Kilgore, 719 So.2d 201 (Ala. 1999);Kenworth of Dothan, Inc. v. Bruner-Wells Trucking, Inc.,751 So.2d 8 (Ala. 1999), and A.G. Edwards Sons, Inc. v.Syvrud, 597 So.2d 197 (Ala. 1992).
Fair contends that each equipment lease must stand alone and that, because the 1995 and 1996 equipment leases contain no arbitration clauses, any disputes relating to negotiations or dealings between Fair and Thompson as to those leases would not be covered by the arbitration clauses in the subsequent leases. However, the question is not whether the dispute arose from the contract containing the arbitration clause but, rather, whether the dispute arose from the relationship described in the arbitration clause. SouthTrust Securities, Inc. v. McClellan,730 So.2d 620 (Ala. 1999). Clearly, the relationship between Fair and Thompson that had arisen from their contracts for leasing construction equipment, before the execution of the lease agreements in which the arbitration clauses appear, would come within the term "any prior negotiations and dealings between Lessee and Lessor." *Page 400 
Fair agreed to arbitrate "all disputes, controversies and claims of any kind and character whatsoever . . . arising out of or related to . . . any prior negotiations or dealings between [Fair and Thompson]." This agreement covers the allegations in Fair's amended complaint.
The trial court erred in not compelling arbitration.
REVERSED AND REMANDED.
HOOPER, C.J., and MADDOX, COOK, SEE, LYONS, BROWN, JOHNSTONE, and ENGLAND, JJ., concur.
[1] Ala. Code 1975, § 40-12-222, provides for that tax. That section reads:
 "In addition to all other taxes now imposed by law, there is hereby levied and shall be collected as herein provided a privilege or license tax on each person engaging or continuing within this state in the business of leasing or renting tangible personal property at the rate of four percent of the gross proceeds derived by the lessor from the lease or rental of tangible personal property; provided, that the said privilege or license tax on each person engaging or continuing within this state in the business of leasing or renting any automotive vehicle or truck trailer, semitrailer or house trailer shall be at the rate of one and one-half percent of the gross proceeds derived by the lessor from the lease or rental of such automotive vehicle or truck trailer, semitrailer or house trailer; provided further, that the tax levied in this article shall not apply to any leasing or rental, as lessor, by the state, or any municipality or county in the state, or any public corporation organized under the laws of the state, including without limiting the generality of the foregoing, any corporation organized under the provisions of Sections 11-54-80 through 11-54-101; provided further, that the privilege or license tax on each person or firm engaging or continuing within this state in the business of the leasing and rental of linens and garments shall be at the rate of two percent of the gross proceeds derived by the lessor from the lease or rental of such linens and garments. (Acts 1971, 1st Ex. Sess., No. 96, p. 166, § 2.)"