MURDOCK, Justice
(dissenting).
It is axiomatic that, before a party to a dispute must submit to the views of some arbitrator as to either the merits of the dispute or whether the subject of the dispute falls within the scope of disputes to be decided on the merits by the arbitrator, a court must first determine whether that arbitration agreement is in fact one that governs as between that party and the opposing party to the dispute. By logic and of necessity, only a court can play this gate-keeping function.[3] Were it otherwise, then, by logical extension, any party to any dispute could insist on appearing before an arbitrator, and the opposing party, even one who in fact has never signed as a party to an arbitration agreement and who otherwise is not properly governed by any arbitration agreement under applicable legal principles, nonetheless will be subjected to the decision of an arbitrator as to whether this is in fact true or not. Until such a condition is determined to be true, *1104 however, no party is, or should be, under any obligation to appear before, or to subject himself or herself to the authority of, some arbitrator, rather than a court.[4]
On an even more fundamental level, however, I would add that today’s case is a corollary and natural successor to this Court’s decision in Auto Oumers Insurance, Inc. v. Blackmon Insurance Agency, Inc., 99 So.3d 1193 (Ala.2012). The comments in my dissent in that case, 99 So.3d at 1199-1203, are equally applicable to the similar question in this case, and I incorporate them herein by this reference.
As I concluded in Auto Oumers, this Court’s approach to “traditional” arbitra-bility cases, i.e., those concerning the substantive scope of an arbitration clause, is “paradoxical.” 99 So.3d at 1201. Specifically, I considered the typical ease, by which I meant a case where the arbitration clause does not describe a universe of types of disputes whose merits are to be arbitrated that is any narrower than the universe of types of disputes within which the arbitrator is to decide if the particular dispute is of a type whose merits are to be arbitrated. 99 So.3d at 1201-02. In such *1105 cases, there logically is no room for decision by the arbitrator — or, as I put it in Auto Owners, we “meet ourselves coming” — on the threshold question whether the arbitration agreement in question governs as to the subject matter of the dispute (the question in Auto Owners). It is the court that of necessity must answer the threshold question of whether the dispute falls within the universe of cases as to which the arbitrator is to decide the question of arbitrability because, until the court does so, and does so in the affirmative, it has no basis to send the case to the arbitrator for any purpose. Once it does so, however, the parameters of the universe of cases in question have been decided and there logically is no room left for the arbitrator to define this universe any differently. Id. at 1201, 1203. “Paradoxically,” if the arbitrator were to take a more narrow view of the universe of cases subject to arbitration on the merits so as, in turn, to find that the particular dispute before the arbitrator does not fall within that universe, then the arbitrator will have made a decision that conflicts with the view of that universe held by the court that sent the case to the arbitrator and of necessity deprives the arbitrator of the authority to make that decision in the first place. The same would be true in all cases in which the threshold question is whether the arbitration agreement is one that governs as between the parties in question — the question in the present case.[5]

. See, e.g., Smith v. Mark Dodge, Inc., 934 So.2d 375, (Ala.2006). Smith v. Mark Dodge was a case postured just like the present case, i.e., where a nonsignatory sought to force a signatory into arbitration under the terms of an arbitration agreement containing a clause expressing an "agree[ment] to arbitrate the arbitrability of any controversy." This Court made the decision whether the arbitration agreement governed as between two parties on the basis of the same equitable-estoppel theory asserted in the present case. 934 So.2d at 379, 380-83. A separate dispute as to whether the subject matter of the dispute fell within the intended scope of the arbitration agreement was sent to the arbitrator for decision under the same “arbitrate-the-arbitrability” clause. Id. at 378-80.

. If, as suggested by the main opinion, the recent decision of the United States Court of Appeals for the Eighth Circuit in Eckert/Wordell Architects, Inc. v. FJM Properties of 'Willmar, LLC, 756 F.3d 1098, 1098 (8th Cir.2014), is to the contrary, then, in all logic and necessity, I respectfully submit that it was decided in error. In point of fact, the opinion in Eckert offers no meaningful exploration of the issue before us. In a relatively short paragraph, a three-judge panel limits the analysis in that case to the narrow issue whether, as a matter of contractual form, the reference to American Arbitration Association rules in an arbitration agreement would satisfy the requirement announced by the Supreme Court in Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002), that there must be "a clear and unmistakable indication” in the written contract containing the arbitration provision that the arbitrator is to decide the scope of the arbitration agreement. After identifying this as the issue to be addressed by it, the panel cites a single Eighth Circuit case as precedent for an affirmative answer and then ends the opinion. 756 F.3d at 1100.
At least one law review article has highlighted why there may be confusion on this issue: the use of the term "arbitrability” for two separate ideas. As the author explains:
"Whether a party is required to submit a particular dispute to arbitration may contain within it two completely distinct legal issues. First, a party may be objecting to arbitration on the ground that no valid, enforceable arbitration agreement exists between the parties. Second, and alternatively, a party may be arguing that the particular dispute does not fall within the scope of the arbitration agreement. The distinction between these two objections to arbitration is critical, because each is governed by its own separate set of legal rules that govern ‘who,’ meaning which forum — the court or the arbitrator — is to adjudicate such objection to arbitration.
"Courts repeatedly recognize that the issue of who has the jurisdiction to decide the 'question of arbitrability’ is a threshold issue. However, the use of the term 'arbitra-bility' in the framing of this question has introduced and is the source of substantial confusion. This is because the term 'arbi-trability,' as used by courts and commentators alike, can refer to both of the two above-noted very different objections to arbitration.”
Steven H. Reisberg, The Rules Governing Who Decides Jurisdictional Issues: First Options v. Kaplan Revisited, 20 Am. Rev. Int’l Arb. 159, 159 (2009).
One federal court not confused about the issue has put it this way: "The existence of an agreement to arbitrate is paramount.... Once the existence of an agreement is established, courts turn to the question of the ‘scope’ of the arbitration agreement, unless the parties have 'clearly and unmistakeably' delegated the issue of 'scope' to an arbitrator.” Sleeper Farms v. Agway, Inc., 211 F.Supp.2d 197, 200 (D.Me.2002) aff'd, 506 F.3d 98 (1st Cir.2007). "Thus, if the Court finds that an agreement to arbitrate exists between the parties, it will leave the second arbitrability question to an arbitrator.” 211 F.Supp.2d at 200 (emphasis added).

. Since this Court’s decision in Auto Owners, it has come to my attention that the views I expressed therein are embodied in writings by other commentators and courts, some of whom frame their criticism of the subject approach to "arbitrability” in terms of a “circularity” of reasoning.
"[A]ttempts to find a source of arbitral power in the rules of arbitral institutions alone must be circular. For example, the [Interstate Commerce Commission’s] practice of referring cases to arbitration once the Court of Arbitration is 'prima facie satisfied’ that an arbitration agreement 'may exist’ is undoubtedly ‘a useful administrative line for an institution’s bureaucracy, but such a standard in itself says nothing about the true presence of consent.’ Whatever may be the ‘true construction’ of the institution's rules ‘as they stand without reference to any particular system of law,' no rational regime of contract law could countenance that an arbitrator arrogate to himself the power to determine his own jurisdiction in the absence of a valid agreement giving him the authority to do so. A functional analysis is possible in terms of our desire not to see a matter entrusted to arbitrators whose own self-interest is likely to skew the result. But the prevention of bootstrapping alone provides an adequate account.”
Alan Scott Rau, The Arbitrability Question Itself, 10 Am. Rev. Int’l Arb. 287, 304-06 (1999) (footnotes omitted). See Sphere Drake Ins. Ltd. v. All Am. Ins. Co., 256 F.3d 587, 591 (7th Cir.2001) ("[A] person who has not consented ... can’t be packed off to a private forum. Courts have jurisdiction to determine their jurisdiction not only out of necessity (how else would jurisdictional disputes be resolved?) but also because their authority depends on statutes rather than the parties’ permission. Arbitrators lack a comparable authority to determine their own authority because there is a non-circular alternative (the judiciary) and because the parties do control the existence and limits of an arbitrator’s power. No contract, no power.”). See also, e.g., China Minmetals Materials Imp. & Exp. Co. v. Chi Mei Corp., 334 F.3d 274, 288 (3d Cir.2003) (reasoning that "a contract cannot give an arbitral body any power, much less the power to determine its own jurisdiction, if the parties never entered into it”). Cf. Matterhorn, Inc. v. NCR Corp., 763 F.2d 866, 869 (7th Cir.1985) ("There would however be a severe problem of bootstrapping if a party to a contract could be forced to arbitrate the question whether he had been coerced or deceived into agreeing to arbitrate disputes arising under the contract.”).