973 So.2d 332 (2007)
CITIFINANCIAL CORPORATION, L.L.C.; Citicorp Trust Bank, fsb; and First Family Financial Services, Inc.
v.
Veronica Hunt PEOPLES.
1051519.
Supreme Court of Alabama.
May 18, 2007.
*333 John R. Chiles, Reid S. Manley, Alan D. Leeth of Burr & Forman, LLP, Birmingham, for appellants.
Philip G. Perkins, Jackson, for appellee.
LYONS, Justice.
CitiFinancial Corporation, L.L.C.; Citicorp Trust Bank, fsb; and First Family Financial Services, Inc. (hereinafter referred to collectively as "the lenders"), appeal from the trial court's order denying their motion to compel arbitration. We reverse and remand.

*334 I. Factual Background and Procedural History

On July 16, 1997, Veronica Hunt Peoples obtained a loan from Commercial Credit of Alabama, Inc., now known as CitiFinancial Corporation, L.L.C.; the loan was secured by a mortgage on real estate. The lenders say that the mortgage conveyed to Commercial Credit an interest in what the parties believed to be the parcel of land on which Peoples's house was located. Peoples contends that the land described in the mortgage is not the land on which her house is located, but is instead an adjacent unimproved parcel of land. The lenders contend that the parties intended to enter into a real-estate loan agreement that used as collateral the property on which Peoples's house is located and that the loan documents evidence this intent. Peoples's mortgage was assigned to Citicorp Trust Bank, fsb, on August 6, 2004. The lenders say that they are all either corporate parents, subsidiaries, affiliates, or assignees of Commercial Credit of Alabama, Inc.
Among the loan documents Peoples executed on July 16, 1997, was a document styled "Disclosure Statement, Note, and Security Agreement," which included within it a separately executed arbitration provision. The arbitration provision states:
"ARBITRATION PROVISION:
"READ THE FOLLOWING ARBITRATION PROVISION CAREFULLY. IT LIMITS CERTAIN OF YOUR RIGHTS, INCLUDING YOUR RIGHT TO OBTAIN REDRESS THROUGH COURT ACTION.
"In consideration of Lender making the extension of credit described above and other good and valuable considerations, the receipt and sufficiency of which is acknowledged by both parties, it is further agreed as follows:
"Definitions for Arbitration Provision. As used in this Arbitration Provision (Provision'), the following definitions will apply:
"`You' or `Your' means any or all of Borrower(s) who execute this Provision, and their heirs, survivors, assigns, and representatives.
"`We' or `Us' means Lender, any assignee, together with their respective corporate parents, subsidiaries, affiliates, predecessors, assignees, successors, employees, agents, directors, and officers (whether acting in their corporate or individual capacity).
"`Credit Transaction' means any one or more past, present, or future extension, application, or inquiry of credit or forbearance of payment such as a loan, retail credit agreement, or otherwise from any of Us to You.
"`Claim' means any case, controversy, dispute, tort, disagreement, lawsuit, or claim now or hereafter existing between You and Us. A Claim includes, without limitation, anything that concerns:
" This Provision;
" Any past, present, or future Credit Transaction;
" Any past, present, or future insurance, service, or product that is offered in connection with a Credit Transaction;
" Any documents or instruments that contain information about any Credit Transaction, insurance, service, or product; or
" Any act or omission by any of Us regarding any Claim.
"Agreement to Arbitrate Claims. Upon written request by either party that is submitted according to the applicable rules for arbitration, any Claim, except those specified below in this Provision, shall be resolved by binding arbitration in accordance with (i) the Federal Arbitration Act; (ii) the Expedited *335 Procedures of the Commercial Arbitration Rules of the American Arbitration Association (`Administrator'); and (iii) this Provision, unless we both agree in writing to forgo arbitration. . . .
"Examples of Claims that are governed by this Agreement include those involving:
" The Truth in Lending Act and Regulation Z;
" The Equal Credit Opportunity Act and Regulation B;
" State insurance, usury, and lending laws; fraud or misrepresentation, including claims for failing to disclose materials facts;
" Any other federal or state consumer protection statute or regulation;
" Any party's execution of this Provision and/or willingness to be bound by its terms and provisions; or
" Any dispute about closing, servicing, collecting, or enforcing a Credit Transaction.
"Judgment. Judgment upon any arbitration award may be entered in any court having jurisdiction.
"Claims Excluded from Arbitration. The following types of matters will not be arbitrated. This means that neither one of us can require the other to arbitrate:
" Any action to effect a foreclosure to transfer title to the property being foreclosed; or
" Any matter where all parties seek monetary damages in the aggregate of $15,000.00 or less in total damages (compensatory and punitive), costs, and fees.
"However, should either party initiate arbitration, the other party, at its option, may seek injunctive and monetary relief in arbitration. Participating in a lawsuit or seeking enforcement of this section by a court shall not waive the right to arbitrate any other Claim.
"Additional Terms.
". . . .

"Costs. The cost of any arbitration proceeding shall be divided as follows:
" The party making demand upon the Administrator for arbitration shall pay $125.00 to the Administrator when the demand is made.
" We will pay to the Administrator all other costs for the arbitration proceeding up to a maximum of one day (eight hours) of hearings.
" All costs of the arbitration proceeding that exceed one day of hearings will be paid by the non-prevailing party.
" In the case of an appeal, the appealing party will pay any costs of initiating an appeal. The non-prevailing party shall pay all costs, fees, and expenses of the appeal proceeding and, if applicable, shall reimburse the prevailing party for the cost of filing an appeal.
" Each party shall pay his/her own attorney, expert, and witness fees and expenses, unless otherwise required by law.
". . . .
"Special Acknowledgments.
"You understand and acknowledge by signing Your name to this Provision that: (i) a court and/or jury will not hear or decide any Claim governed by this Provision, (ii) the funding for Your Credit Transaction will come in whole or in part from sources outside this state, which will constitute interstate commerce within the meaning of the United States Arbitration Act, 9 U.S.C. §§ 1-9, (iii) discovery in an arbitration proceeding can be much more limited than in a court proceeding, *336 (iv) the arbitrator may not give written reasons for his/her award, (v) rights to appeal an arbitration award are very limited, and (vi) the rights of the parties hereunder may not be exactly mutual in all respects.
"READ THE ABOVE ARBITRATION PROVISION CAREFULLY. IT LIMITS CERTAIN OF YOUR RIGHTS, INCLUDING YOUR RIGHT TO OBTAIN REDRESS THROUGH COURT ACTION."
(All boldface type in original.)
Peoples later defaulted on the loan, and the lenders proceeded with a nonjudicial foreclosure of the property described in the mortgage. Peoples was evicted from her house as a result of the foreclosure sale. She contends that that action was wrongful because, she asserts, the mortgage was secured by an unimproved lot, not the property on which her house is located.
Peoples sued the lenders, alleging in her complaint that before she filed it, they initiated "foreclosure proceedings and/or legal process to displace [Peoples] from her home . . . having no legal right to do so." Her complaint alleges wrongful foreclosure or collection and seeks injunctive relief in the form of declaring the foreclosure deed void.
The lenders filed a motion to compel arbitration and to stay the proceedings in the trial court pending arbitration, stating (1) that the Federal Arbitration Act, 9 U.S.C. § 1 et seq., requires enforcement of Peoples's arbitration provision; (2) that the agreement to arbitrate is contained in a written document; (3) that the transaction between Peoples and the lenders involved and affected interstate commerce; and (4) that Peoples's claims fall within the broad scope of the arbitration provision. In support of their motion, the lenders submitted a copy of the "Disclosure Statement, Note, and Security Agreement," which contains the arbitration provision Peoples executed, and the affidavit of Teresa M. Baer, a manager for CitiFinancial dealing with licensing and corporate records. Baer testified that the parties' transaction involved interstate commerce and that the copy of the "Disclosure Statement, Note, and Security Agreement" was authentic.
Peoples filed a one-page response to the lenders' motion to compel arbitration, arguing that the arbitration provision should not be enforced because, she said, her action is not an action on contract, but an action for wrongful foreclosure upon a parcel of land that is not subject to the molt, gage, and because, she said, she cannot afford to pay any of the costs of arbitration. She did not submit any supporting evidence with her response. The lenders answered Peoples's complaint, including in their answer an affirmative defense alleging that Peoples is precluded from proceeding in a judicial forum because she agreed to arbitrate her claims.
The trial court denied the motion to compel arbitration on the separate bases (a) that the lenders had substantially invoked the litigation process when they instituted the foreclosure and eviction proceedings, a ground not argued by Peoples, and (b) that the litigation arises from a matter not covered by the arbitration provision. The lenders appealed from that order.

II. Standard of Review

"`[T]he standard of review of a trial court's ruling on a motion to compel arbitration at the instance of either party is a de novo determination of whether the trial judge erred on a factual or legal issue to the substantial prejudice of the party seeking review.'" Vann v. First Cmty. Credit Corp., 834 So.2d 751, 752-53 (Ala. *337 2002) (quoting Ex parte Roberson, 749 So.2d 441, 446 (Ala.1999)). Accord, General Motors Corp. v. Stokes Chevrolet, Inc., 885 So.2d 119, 121 (Ala.2003).

III. Analysis

The lenders argue a multitude of reasons why we should reverse the trial court's order denying their motion to compel arbitration. We will first address the bases upon which the trial court denied the motion. Peoples concedes that the arbitration provision is in writing, that she signed it, and that the transaction evidenced by the contract that contains the arbitration provision involved interstate commerce. We therefore need not address those issues argued by the lenders.

A. Whether the Lenders Waived Their Right to Arbitrate

The lenders contend that the trial court erred when it determined that the lenders had waived their right to arbitrate because they substantially invoked the litigation process when they foreclosed on the mortgage and instituted eviction proceedings. In Ocwen Loan Servicing, LLC v. Washington, 939 So.2d 6, 14 (Ala.2006), this Court discussed the burden a party opposing arbitration must bear when it attempts to show that the movant has waived its right to arbitration by substantially invoking the litigation process:
"In order to show waiver by litigation-related conduct, the party opposing arbitration must demonstrate that the movant has substantially invoked the litigation process and thereby the opposing party would be substantially prejudiced if the case were submitted to arbitration. Companion Life Ins. Co. v. Whitesell Mfg., Inc., 670 So.2d 897, 899 (Ala.1995). In Moses H. Cone Memorial Hospital [v. Mercury Constr. Corp., 460 U.S. 1 (1983)], the United States Supreme Court recognized a strong federal policy favoring arbitration:
"The [Federal] Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.'

"460 U.S. at 24-25, 103 S.Ct. 927 (emphasis added; footnote omitted). In order to establish waiver, the party opposing arbitration bears a heavy burden, and waiver is not lightly to be inferred. Thompson v. Skipper Real Estate Co., 729 So.2d 287, 292 (Ala.1999), and cases cited therein."
Moreover, "the issue whether a party has waived the right to arbitration by its conduct during litigation is a question for the court and not the arbitrator." Ocwen Loan Servicing, 939 So.2d at 14.
The lenders cannot be considered to have invoked litigation by foreclosing on the mortgage for two reasons. First, the arbitration provision specifically excludes foreclosure from matters that must be arbitrated. Second, the foreclosure was nonjudicial; it involved no litigation at all. Therefore, the only proceeding that involved any litigation before. Peoples filed her complaint was the separate eviction proceeding instituted by the lenders after they had foreclosed on the mortgage.
We examined a similar situation in Conseco Finance Corp. Alabama v. Salter, 846 So.2d 1077 (Ala.2002). In Salter, the purchaser of a mobile home signed a contract containing an arbitration clause that gave the finance company the right to use judicial or nonjudicial relief to enforce a security agreement relating to the mobile home or to foreclose on the home. After the purchaser defaulted, the finance company *338 sued, seeking possession of the mobile home or damages for the purchaser's retention of the home. The purchaser counterclaimed, alleging negligence and the tort of outrage based upon the finance company's efforts to collect delinquent payments. The finance company then filed a motion to compel the purchaser to arbitrate his counterclaim, but the trial court denied the motion on the basis that the finance company had substantially invoked the litigation process and had waived its right to arbitrate when it filed the action. In Companion Life Insurance Co. v. Whitesell Manufacturing, Inc., 670 So.2d 897, 899 (Ala.1995), this Court said:
"Whether a party's participation in an action amounts to an enforceable waiver of its right to arbitrate depends on whether the participation bespeaks an intention to abandon the right in favor of the judicial process and, if so, whether the opposing party would be prejudiced by a subsequent order requiring it to submit to arbitration. No rigid rule exists for determining what constitutes a waiver of the right to arbitrate; the determination as to whether there has been a waiver must, instead, be based on the particular facts of each case."
We reversed the trial court's order denying the motion to compel, noting that the parties' arbitration agreement specifically allowed the finance company to file the action to regain possession of the mobile home. We held in Salter that because "[t]he relief requested by [the finance company] in its complaint [fell] within the parameters of the judicial relief specifically agreed to by [the purchaser]," the company's action did not "`bespeak an intention to abandon the right [of arbitration] in favor of the judicial process.'" 846 So.2d at 1081 (quoting First Family Fin. Servs., Inc. v. Jackson, 786 So.2d 1121, 1128 (Ala. 2000)).
The arbitration provision signed by Peoples specifically excludes from arbitration "[a]ny action to effect a foreclosure to transfer title to the property being foreclosed." (Emphasis added.) The verb "effect" means "to cause to come into being"; or "to bring about often by surmounting obstacles." Merriam-Webster's Collegiate Dictionary 397 (11th ed.2003). Once the lenders conducted the nonjudicial foreclosure and Peoples did not vacate the property, the unlawful-detainer action would have been necessary to allow the lenders to bring about the complete relief that should have been obtained by the nonjudicial foreclosure, that is, surmounting the obstacle of the mortgagor's failure to surrender possession to the mortgagee. As was the case in Salter, the relief sought by the lenders here fell "within the parameters of the judicial relief specifically agreed to by [Peoples]." 846 So.2d at 1081. Indeed, had Peoples considered the lenders' commencement of the unlawful-detainer action as a waiver of their right to arbitrate, she could have counterclaimed, but we have no indication that she did so. Peoples has not presented any evidence concerning the eviction process; the record reflects only that it occurred. In fact, as previously noted, Peoples did not even assert this ground as a basis for the unenforceability of the arbitration provision. In all events, Peoples did not bear her burden of proving that the lenders substantially invoked the litigation process by instituting the separate eviction proceeding; therefore, we conclude that the lenders did not waive their right to arbitration.

B. Who Is Authorized to Decide Arbitrability

The lenders argue that the trial court also erred when it determined that Peoples's claims were not "covered by" arbitration. They contend that the arbitration provision clearly reflects the parties' intention *339 to arbitrate the question of arbitrability, and, therefore, that that question must be submitted to arbitration. In Smith v. Mark Dodge, Inc., 934 So.2d 375, 379 (Ala. 2006), we stated:
"A threshold issue is which forum should decide the question of the scope of the arbitration agreement. In First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995), the United States Supreme Court stated:
"`Just as the arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that dispute, see, e.g., Mastrobuono v. Shearson Lehman Hutton, Inc., [514 U.S. 52, 57 (1995)]; Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626 (1985), so the question "who has the primary power to decide arbitrability" turns upon what the parties agreed about that matter.'
"514 U.S. at 943, 115 S.Ct. 1920. However, the Court warned, `[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is "clea[r] and unmistakabl[e]" evidence that they did so.' 514 U.S. at 944, 115 S.Ct. 1920 (quoting AT & T Techs. v. Communications Workers, 475 U.S. 643, 649, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986)). This Court has similarly required that trial courts order arbitration of the issue of arbitrability when the plain language of the agreement unquestionably shows that the parties agreed to arbitrate the issue of arbitrability. Polaris Sales, Inc. v. Heritage Imports, Inc., 879 So.2d 1129, 1133-34 (Ala.2003); and Ex parte Perry, 744 So.2d 859, 866-67 (Ala.1999)."
The question presented by this case is whether the arbitration provision clearly and unmistakably provides that the arbitrator shall decide arbitrability. The lenders argue that incorporation into the arbitration provision of the Commercial Rules of the American Arbitration Association, conferring authority to decide such issues on the arbitrator, evidences such an intent. This Court has not decided whether the incorporation of such rules is sufficient to show the parties' intent to delegate the issue of arbitrability to an arbitrator, but federal courts have so held. In Terminix International Co. v. Palmer Ranch Ltd. Partnership, 432 F.3d 1327, 1332 (11th Cir.2005), the United States Court of Appeals for the Eleventh Circuit stated:
"[T]he parties have agreed that the arbitrator will [decide the issue of arbitrability] by providing (in all three of the arbitration clauses at issue) that `arbitration shall be conducted in accordance with the Commercial Arbitration Rules then in force of the American Arbitration Association' (AAA). AAA Rule 8(a),[1] in turn, provides that `[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement.' Am. Arbitration Ass'n, Commercial Arbitration Rules, http:// www.adr.org/sp.asp?id=22173#Toc 13029601.[2] By incorporating the AAA Rules, including Rule 8,[3] into their agreement, the parties clearly and unmistakably *340 agreed that the arbitrator should decide whether the arbitration clause is valid. See, e.g., Contec Corp. v. Remote Solution, Co., 398 F.3d 205, 208 (2d Cir.2005) (`when . . . parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator'); Apollo Computer, Inc. v. Berg, 886 F.2d 469, 473 (1st Cir.1989) (`By contracting to have all disputes resolved according to the Rules of the ICC . . ., Apollo agreed to be bound by Articles 8.3 and 8.4. These provisions clearly and unmistakably allow the arbitrator to determine her own jurisdiction when, as here, there exists a prima facie agreement to arbitrate whose continued existence and validity is being questioned.'). . . . "
We find the reasoning of the Eleventh Circuit and other Circuit Courts of Appeal that have addressed this issue persuasive and hold that an arbitration provision that incorporates rules that provide for the arbitrator to decide issues of arbitrability clearly and unmistakably evidences the parties' intent to arbitrate the scope of the arbitration provision. We therefore conclude that under the arbitration provision Peoples executed, issues of arbitrability are to be decided by the arbitrator.

C. Unconscionability

In her response to the lenders' motion to compel arbitration, Peoples makes the bare assertion that she "cannot pay, any cost of arbitration." Although the trial court did not deny the motion to compel arbitration on this basis, we address it because
"this Court will affirm a judgment for any reason supported by the record that satisfies the requirements of due process, Taylor v. Stevenson, 820 So.2d 810, 814 (Ala.2001), even where the ground upon which we affirm was not argued before the trial court or this Court. Ex parte CTB, Inc., 782 So.2d 188, 191 (Ala. 2000)."
Smith v. Mark Dodge, Inc., 934 So.2d at 380. Here, Peoples argued to the trial court during the hearing on the motion to compel arbitration that she could not pay the costs of arbitration, and the lenders argued to this Court that Peoples's alleged inability to pay such costs does not render the arbitration provision unconscionable.
Here, the arbitration provision provides that the cost to initiate arbitration to be paid by Peoplesis $125. The provision assigns to the lenders the responsibility for the costs of a hearing up to a maximum of eight hours, then to the nonprevailing party any costs exceeding one day of hearings. We examined a similar provision in Commercial Credit Corp. v. Leggett, 744 So.2d 890, 898 (Ala.1999), in which we stated:
"It is difficult to see how a party who truly believes she has a meritorious cause of action can view these provisions as particularly onerous. Leggett would initially have to pay only $125.00 to commence the process. Subsequently, the defendants would pay for the first day of proceedings, regardless of the outcome. The losing party would then pay for the remainder of the proceedings. In fact, the only parties disadvantaged by these cost provisions are the losing parties whoever they might be."
Moreover, we have stated that "unconscionability is an affirmative defense, and the party asserting the defense bears the burden of proving unconscionability." Blue Cross Blue Shield of Alabama v. Rigas, 923 So.2d 1077, 1086 (Ala.2005). Peoples presented no evidence that would *341 support her claim that she could not pay the $125 filing fee to initiate arbitration.

IV. Conclusion

The trial court erred in denying the lenders' motion to compel arbitration. We therefore reverse the order and remand the case. On remand, the trial court shall grant the motion to compel arbitration and either issue a stay of these proceedings pending arbitration or dismiss the case.
REVERSED AND REMANDED WITH DIRECTIONS.
COBB, C.J., and SEE, WOODALL, STUART, SMITH, BOLIN, and PARKER, JJ., concur.
MURDOCK, J., concurs in the result.
MURDOCK, Justice (concurring in the result).
I concur in the result reached by the main opinion. I cannot, however, agree with the analysis by which that result is reached, and I write separately to address two sections of that analysis.
A. Did the lenders waive their right to arbitrate?
The main opinion reasons that the lenders did not waive their right to arbitration by pursuing a judicial eviction of the borrower because the parties' arbitration agreement contains an express exclusionary clause applicable to "any action to effect a foreclosure to transfer title to the property being foreclosed." If this exclusion were worded so as to apply to actions to "give effect" to a foreclosure, then I could come closer to agreeing with the main opinion that this exclusion specifically encompassed the lenders' eviction action.
The exclusion does not apply, however, to actions to "give effect" to a foreclosure; rather, it applies to actions to "effect" a foreclosure. The object of the word "effect" is "foreclosure," not "eviction." A foreclosure, of course, is a process by which title to property is transferred; it does not accomplish a physical eviction of the borrower (indeed, the arbitration agreement itself explains that the exclusion at issue applies to "a foreclosure to transfer title"). In light of the meaning of the word "effect" as explained in the main opinion, and the fact that the object of that word in the arbitration agreement is "a foreclosure to transfer title," I am not persuaded that the eviction proceedings pursued by the lenders fell "`within the parameters of the judicial relief specifically agreed to by [Peoples].'" 973 So.2d at 338 (quoting Conseco Fin. Corp.-Alabama v. Salter, 846 So.2d 1077, 1081 (Ala.2002)).
Notwithstanding the fact that the eviction action may not have fallen within the express exception relied upon by the main opinion, I believe the main opinion's conclusion that the lenders did not waive their right to arbitrate nonetheless is correct. I come to this conclusion because, exclusions aside, the eviction action did not fall within the affirmative reach of the arbitration agreement in the first place.
By the time an eviction action is initiated by a mortgagee, the mortgagee already has achieved the transfer of title to itself, along with the corresponding right to possession of the property. Having an arbitrator reaffirm that right to possession would add nothing. In order to "give effect" to that righti.e., to forcibly, physically remove the mortgagor from the propertyit is necessary in any event for the mortgagee to invoke the assistance of the courts and law enforcement. I do not believe the arbitration agreement in the present case reasonably can be construed as intending to require the parties to seek through arbitration something that cannot be provided through arbitration, i.e., the *342 forcible, physical removal of the plaintiff from the property. Since the mortgagee could obtain that removal outside the provisions of the arbitration agreement (indeed, only outside those provisions), the fact that the mortgagee did so cannot logically be considered a waiver of any rights under those provisions.
B. Who decides the issue of arbitrability?
Upon my initial review of this case, I questioned on what basis this Court could turn over to an arbitrator the question of the arbitrability of a dispute involving the alleged wrongful eviction of a plaintiff from property where there is not substantial evidence that the property from which she was removed is covered by the mortgage to which the controlling arbitration agreement applies. Without such evidence, on what basis could any tribunal reasonably conclude that the arbitration agreement pertaining to the mortgage and the mortgaged property governs the lenders' eviction of the plaintiff from that property? In other words, whether the issue is the arbitrability of a dispute or the issue is who will decide the arbitrability of a dispute, on what basis are we to distinguish this case from any case in which a lender simply takes it upon itself to "foreclose" upon some parcel of land (or for that matter, some automobile or other personal property) that is not covered by the arbitration agreement?
At least for purposes of the present case, the answer lies in the particular provisions of the arbitration agreement at issue. Those provisions are such that they satisfy each step of what logically must be a two-step inquiry, namely: (1) whether the arbitration agreement reasonably may be construedthat is, is it reasonably susceptible of being construedas requiring arbitration of the dispute at issue, and (2) if so, whether the arbitration agreement also provides that it is to be the arbitrator who shall decide whether in fact the arbitration agreement shall be construed as requiring the parties to arbitrate the dispute.[4]
As to the first step, the contractual provisions in this particular case are in fact worded broadly enough reasonably to be susceptible of a construction that covers the dispute at issue. To begin, the contract provides that, with certain exceptions, "any Claim . . . shall be resolved by binding arbitration." A "Claim" is defined in the arbitration agreement very broadly to include "any case, controversy, dispute, tort, disagreement, lawsuit, or claim now or hereafter existing between [the lenders] and [the plaintiff]."[5] Further, the definition *343 of "Claim" in the contract states that "[a] claim includes, without limitation, anything that concerns: . . . Any documents or instruments that contain information about any Credit Transaction. . . ." "Credit Transaction" is itself broadly defined as any "past, present, or future extension, application, or inquiry of credit . . . such as a loan." Moreover, the agreement provides the following "example" of a "Claim": "Any dispute about closing, servicing, collecting, or enforcing a Credit Transaction." I conclude that these contractual provisions reasonably are susceptible of being construed as requiring the parties to arbitrate the dispute at issue. See Ex parte Discount Foods, Inc., 789 So.2d 842, 844 (Ala.2001) ("Whether an arbitration provision encompasses a party's claim is a matter of contract interpretation. . . . That interpretation is guided by the intent of the parties. . . ."); Koullas v. Ramsey, 683 So.2d 415, 417 (Ala.1996) (explaining that the court will not apply arbitration provisions to matters not "contemplated by the parties when they entered their contract"). See also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) (holding that "any doubts" as to the intent of the parties to subject a matter to arbitration "should be resolved in favor of arbitration"); Jones v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 604 So.2d 332, 340 (Ala.1991).
I turn then to the second step of the analysis: whether the parties' contract does in fact provide that it is to be the arbitrator, rather than a court, who is to actually construe the arbitration agreement and determine whether it requires the parties to arbitrate their dispute. As to this step, it is not enough that the parties "objectively revealed an intent to subject the arbitrability issue to arbitration." First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). As the main opinion notes, the question that must be answered in this regard is whether the "`the plain language of the [arbitration] agreement unquestionably shows,'" or "`"`clea[rly] and unmistakabl[y]' evidence[s],"'" "`"that the parties agreed to arbitrate arbitrability."'" 973 So.2d at 339 (quoting Smith v. Mark Dodge, Inc., 934 So.2d 375, 379 (Ala.2006), in turn quoting First Options of Chicago v. Kaplan, 514. U.S. at 944, 115 S.Ct. 1920).[6]
The main opinion addresses the foregoing question by relying upon the fact that the arbitration agreement contains a general incorporation by reference of the "Commercial Rules of the American Arbitration Association," without setting forth any of the specific provisions of those Rules. In this case, however, it is not necessary to depend upon this incorporation by reference to determine that the parties' contract "unquestionably show[s]" their agreement to arbitrate the issue of *344 arbitrability. Instead, we may proceed on the more direct basis provided by the explicit terms of the contract before us requiring "Claims" to be arbitrated and defining a "Claim" to include "anything that concerns: This Provision," where "This Provision" is in fact the provision that undertakes to define what is and is not to be arbitrated.
NOTES
[1] On the date this opinion was released, the quoted language appeared in Rule 7, not Rule 8.
[2] On the date this opinion was released, the Commercial Arbitration Rules could be found, not at this Web address, but at http://www. adr.org/sp.asp?id=22440.
[3] See note 1 above.
[4] See, e.g., Capitol Chevrolet & Imports, Inc. v. Payne, 876 So.2d 1106, 1110-11 (Ala.2003) (See, J., dissenting) (noting that, although it was possible to construe contract language so as to limit arbitration to the initial sale of a vehicle, it was "also reasonable to construe the language in the arbitration agreement" (emphasis added) as applying to the particular dispute at issue in that case and, with that premise stated, concluding that the court should enforce the further provisions in the arbitration agreement that "`any question regarding whether a particular controversy is subject to arbitration shall be decided by the Arbitrator'").
[5] Although the definition of a "Claim" is indeed very broad, covering by its terms any dispute now or at any time in the future between the parties, the only question presented in this appeal concerns the application of the arbitration agreement to the particular dispute at issue. That dispute concerns the manner in which the lenders chose to protect themselves from default under the loan agreement. As to whether such a dispute was intended by the parties to be covered by their arbitration agreement, I note that there is no evidence that the lenders' effort to foreclose upon and evict Peoples from her home was a result of anything other than a good-faith error on its part as to which parcel of real property had been given as security for the loan agreement. Further, Peoples does not contend that this dispute is not a "controversy . . . arising out of [the] contract" containing the arbitration clause, or out of the. "transaction" evidenced by that contract. See 9 U.S.C. § 2 (Federal Arbitration Act). Nor is this a case in which the evidence indicates that application of the arbitration agreement to the disputed issue would be unconscionable.
[6] Unlike the presumption in favor of arbitration of the underlying dispute, see Moses H. Cone Mem'l Hosp., supra, there is no presumption in favor of the arbitrator when the question is who should decide whether that dispute is arbitrable. First Options of Chicago, Inc. v. Kaplan, 514 U.S. at 944-45, 115 S.Ct. 1920. Indeed, the question of "who decides" is governed by the opposite presumption, i.e., a presumption that the court should decide. Id. at 945, 115 S.Ct. 1920.