Rel: 9/26/14

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0649), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## SPECIAL TERM, 2014

_____

### 1121417

_____

**Eric Anderton and Jackson Key Practice Solutions, LLC**

**v.**

**The Practice-Monroeville, P.C.**

**Appeal from Monroe Circuit Court**
**(CV-11-900084)**

BRYAN, Justice.

Eric Anderton and Jackson Key Practice Solutions, LLC ("Jackson Key"), appeal from the Monroe Circuit Court's order denying their motion to compel arbitration. We reverse and remand.

The Practice-Monroeville, P.C. ("the Practice"), is a medical-practice group located in Monroeville. Allscripts Healthcare, LLC ("Allscripts"), sells health-care software to health-care providers. Allscripts is a North Carolina company and does not have an office in Alabama. Jackson Key is a certified "sales-and-service partner" of Allscripts, selling and servicing Allscripts software, and Anderton is an employee and partial owner of Jackson Key. In May 2011, the Practice and Allscripts entered into a written contract in which the Practice purchased health-care software called "MyWay" from Allscripts through Jackson Key ("the contract"). Although the contract was between the Practice and Allscripts, Jackson Key supported the transaction. The contract provides that "Allscripts may subcontract its obligations hereunder to a third party or affiliate." An addendum to the contract further states that "Allscripts and [the Practice] agree that the Allscripts MyWay Software shall be hosted by Jackson Key[, and] that any backup, system performance, data recovery, [and] service levels will be the responsibility of [Jackson Key]."

The contract contains an arbitration provision, which states, in pertinent part: "Any dispute or claim arising out

2

of, or in connection with, this Agreement shall be finally settled by binding arbitration in Raleigh, NC, in accordance with the then-current rules and procedures of the American Arbitration Association ...."

The Practice became dissatisfied with the performance of the MyWay software and unsuccessfully attempted to cancel its contract with Allscripts. On September 12, 2011, the Practice sued Jackson Key and Anderton, but not Allscripts, in the circuit court. The Practice alleged that Jackson Key, pursuant to the addendum to the contract, had undertaken sole responsibility for "system performance" of the MyWay software that it had implemented for the Practice. The complaint further alleged that Jackson Key and Anderton were negligent in establishing the system performance of that software. On October 21, 2011, Jackson Key and Anderton moved to compel arbitration based on the arbitration provision in the contract.

In November 2011, Jackson Key, acting pro se, sued the Practice in the Monroe District Court. In that action, Jackson Key alleged that the Practice owed it money for Microsoft Word software that Jackson Key had purchased for the

Practice. Following a trial, the district court entered a judgment in favor of the Practice on March 28, 2012. Jackson Key subsequently appealed that judgment to the Monroe Circuit Court. Over Jackson Key and Anderton's objection, the circuit court consolidated that appeal with the action initiated by the Practice regarding the contract.

The Practice opposed the motion to compel arbitration in the circuit court. The Practice argued that the circuit court -- not the arbitrator -- should decide the threshold issue of whether the dispute over the MyWay software is arbitrable. The Practice then argued that the circuit court should deny Jackson Key and Anderton's motion to compel arbitration because, it said, the dispute was not within the scope of the arbitration provision. Additionally, the Practice argued that Jackson Key and Anderton had waived any right to arbitrate by substantially invoking the litigation process in the district court.[1] On July 31, 2013, the circuit court denied the motion

---

[1]Although most of the Practice's argument below regarding the waiver issue was in reference to Jackson Key, at times the Practice referred to the actions in the district court by the circuit court "defendants," i.e., both Jackson Key and Anderton. Thus, it appears that the Practice argued that both Jackson Key and Anderton waived their alleged right to arbitrate through their conduct in the district court.

1121417

to compel, without stating a reason. Jackson Key and Anderton appealed pursuant to Rule 4(d), Ala. R. App. P., which authorizes an appeal from an order either granting or denying a motion to compel arbitration.

### Standard of Review

"'This Court's review of an order granting or denying a motion to compel arbitration is de novo. ...'

"United Wisconsin Life Ins. Co. v. Tankersley, 880 So. 2d 385, 389 (Ala. 2003). Furthermore:

"'"A motion to compel arbitration is analogous to a motion for summary judgment. TranSouth Fin. Corp. v. Bell, 739 So. 2d 1110, 1114 (Ala. 1999). The party seeking to compel arbitration has the burden of proving the existence of a contract calling for arbitration and proving that that contract evidences a transaction affecting interstate commerce. Id. 'After a motion to compel arbitration has been made and supported, the burden is on the non-movant to present evidence that the supposed arbitration agreement is not valid or does not apply to the dispute in question.'"

"'Fleetwood Enters., Inc. v. Bruno, 784 So. 2d 277, 280 (Ala. 2000) (quoting Jim Burke Auto., Inc. v. Beavers, 674 So. 2d 1260, 1265 n. 1 (Ala. 1995) (emphasis omitted)).'

>"*Vann v. First Cmty. Credit Corp.*, 834 So. 2d 751, 753 (Ala. 2002)."

*Cartwright v. Maitland*, 30 So. 3d 405, 408-09 (Ala. 2009).

## Discussion

There is no dispute that a contract calling for arbitration exists in this case and that that contract evidences a transaction affecting interstate commerce. In the circuit court, the parties disputed whether Jackson Key and Anderton had waived any right they may have had to arbitration and whether the Practice's claim falls within the scope of the arbitration provision. The parties also disputed whether the circuit court or the arbitrator should decide the issue of arbitrability. The circuit court did not give a reason for denying Jackson Key and Anderton's motion to compel arbitration. We will examine the disputed issues to determine whether the circuit court could have properly denied the motion to compel.

## I. Issues Relating to Waiver

We first address whether Jackson Key and Anderton waived any right they may have to arbitration by substantially invoking the litigation process in Jackson Key's action in the district court. As a threshold matter, we address whether the

waiver issue is one for the circuit court or the arbitrator to decide. This Court has stated that "the issue whether a party has waived the right to arbitration by its conduct during litigation is a question for the court and not the arbitrator." Ocwen Loan Servicing, LLC v. Washington, 939 So. 2d 6, 14 (Ala. 2006).[2] However, the general rule that the court and not the arbitrator decides whether a party has waived the right to arbitration has an exception: issues typically decided by the court will be decided by the arbitrator instead when there is "'clear and unmistakable evidence'" of such an agreement in the arbitration provision. First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995) (quoting AT&T Techs., Inc. v. Communications Workers of America, 475 U.S. 643, 649 (1986) (alterations omitted)); see also Marie v. Allied Home Mortg. Corp., 402 F.3d 1, 14 (1st

---

[2]In Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 84-85 (2002), the United States Supreme Court stated that "the presumption is that the arbitrator should decide 'allegation[s] of waiver, delay, or a like defense to arbitrability.'" (Quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983).) However, this Court and some other courts have concluded that Howsam did not intend to disturb the traditional rule that the issue whether a party has waived the right to arbitration by its conduct during litigation is a question for the court and not the arbitrator. See Ocwen, 939 So. 2d at 12-14 (thoroughly discussing the matter).

1121417

Cir. 2005) (citing First Options). In this case, Jackson Key and Anderton argue in their reply brief that the arbitration provision, by incorporating the rules and procedures of the American Arbitration Association ("the AAA"), clearly and unmistakably indicates that the arbitrator, not the court, should decide the waiver issue. However, Jackson Key and Anderton first make that argument in their reply brief. "We do not permit new matters to be raised for the first time in a reply brief." Birmingham Bd. of Educ. v. Boyd, 877 So. 2d 592, 594 (Ala. 2003).

Although Jackson Key and Anderton argue in their principal brief that the relevant incorporated AAA rule provides for the arbitrator rather than the court to decide whether the dispute falls within the scope of the arbitration provision, see Part II, infra, they did not make a similar argument about waiver until they filed their reply brief. Further, the record on appeal does not indicate that Jackson Key and Anderton made such an argument about waiver before the circuit court. Rather, in a filing submitted below, they "agree[d] that the issue of waiver is for the Court to decide, but dispute[d] that there has been any waiver." "This Court

8

cannot consider arguments advanced for the purpose of reversing the judgment of a trial court when those arguments were never presented to the trial court for consideration ...." State Farm Mut. Auto. Ins. Co. v. Motley, 909 So. 2d 806, 821 (Ala. 2005). For these reasons, we do not further discuss whether the AAA rule incorporated into the arbitration provision clearly and unmistakably indicates that the arbitrator instead of the court should decide the waiver issue.

We next discuss the merits of the waiver issue.

"It is well settled under Alabama law that a party may waive its right to arbitrate a dispute if it substantially invokes the litigation process and thereby substantially prejudices the party opposing arbitration. Whether a party's participation in an action amounts to an enforceable waiver of its right to arbitrate depends on whether the participation bespeaks an intention to abandon the right in favor of the judicial process, and, if so, whether the opposing party would be prejudiced by a subsequent order requiring it to submit to arbitration. No rigid rule exists for determining what constitutes a waiver of the right to arbitrate; the determination as to whether there has been a waiver must, instead, be based on the particular facts of each case."

Companion Life Ins. Co. v. Whitesell Mfg., Inc., 670 So. 2d 897, 899 (Ala. 1995).

9

"In order to demonstrate that the right to arbitrate a dispute has been waived, the party opposing arbitration must demonstrate <u>both</u> (1) that the party seeking arbitration substantially invoked the litigation process, and (2) that the party opposing arbitration would be substantially prejudiced by an order requiring it to submit to arbitration."

<u>SouthTrust Bank v. Bowen</u>, 959 So. 2d 624, 633 (Ala. 2006) (some emphasis omitted). "Because there is a strong federal policy favoring arbitration, waiver of the right to compel arbitration is not lightly inferred, and the party seeking to prove waiver has a 'heavy burden.'" <u>Aurora Healthcare, Inc. v. Ramsey</u>, 83 So. 3d 495, 500 (Ala. 2011) (quoting <u>Paragon Ltd. v. Boles</u>, 987 So. 2d 561, 564 (Ala. 2007)). "Additionally, as this Court has consistently noted: '[T]here is a presumption against a court's finding that a party has waived the right to compel arbitration.'" <u>Bowen</u>, 959 So. 2d at 633 (quoting <u>Eastern Dredging & Constr., Inc. v. Parliament House, L.L.C.</u>, 698 So. 2d 102, 103 (Ala. 1997)).

Before the circuit court, the Practice argued that Jackson Key and Anderton had waived any right to arbitration by litigating the district court action seeking reimbursement for the Practice's purchase of Microsoft Word programs. As an initial matter, we note that Jackson Key was the only

1121417

plaintiff in the district court action; Anderton was not a party in that action. Clearly, Anderton did not waive any right he may have to arbitrate. After being sued in the circuit court, Anderton's first action was to file, with Jackson Key, a motion to compel arbitration. Merely filing a motion to compel arbitration does not substantially invoke the litigation process. See Ex parte Merrill Lynch, Pierce, Fenner & Smith, Inc., 494 So. 2d 1, 3 (Ala. 1986) (concluding that there was no waiver when the defendant merely filed a motion to compel arbitration); and First Family Fin. Servs. v. Jackson, 786 So. 2d 1121, 1128 (Ala. 2000) (same); see also Kennamer v. Ford Motor Credit Co., [Ms. 1120689, February 28, 2014] ___ So. 3d ___ (Ala. 2014) (concluding that there was no waiver of the right to arbitration when a car dealership merely filed an answer and a motion to compel arbitration).

We also conclude that Jackson Key did not waive any right it may have to arbitrate the MyWay dispute by litigating the district court action. In the district court, Jackson Key alleged that the Practice owed it money for Microsoft Word software Jackson Key had sold to the Practice. At trial in the district court, Albert Key, an employee of Jackson Key,

11

testified that, while Jackson Key was providing training to the Practice's personnel on the MyWay software, the Practice asked Jackson Key to purchase and install 10 copies of Microsoft Word. Key testified that Jackson Key purchased and installed the Microsoft software but that the Practice failed to reimburse Jackson Key for the software. Key further stated that the Microsoft Word transaction was separate from the contract in which the Practice purchased the MyWay software from Allscripts. The record does not contain an arbitration provision addressing the purchase of the Microsoft software.

The district court action presented a distinct issue from the Practice's claim in the circuit court, i.e., that Jackson Key and Anderton were negligent in establishing the system performance of the MyWay software the Practice had purchased from Allscripts. "Only prior litigation of the same legal and factual issues as those the party now wants to arbitrate results in waiver of the right to arbitrate." Larry E. Edmonson, Domke on Commercial Arbitration § 23:6 (3d ed. 2014). See also Doctor's Assocs., Inc. v. Distajo, 107 F.3d 126, 133 (2d Cir. 1997) (stating that precedent in that circuit "support[s] the view that only prior litigation of the

same legal and factual issues as those the party now wants to arbitrate results in waiver of the right to arbitrate" and that "[o]ther circuits seem to agree that waiver can only occur when a party has previously litigated the same claims it now seeks to arbitrate"); Gingiss Int'l, Inc. v. Bormet, 58 F.3d 328, 330-32 (7th Cir. 1995) (stating that a franchisor who brought an unlawful-detainer action against its franchisee did not waive its right to arbitrate other claims brought by the franchisee because the two suits involved different issues); and Subway Equip. Leasing Corp. v. Forte, 169 F.3d 324, 328 (5th Cir. 1999) ("[A] party only invokes the judicial process to the extent it litigates a specific claim it subsequently seeks to arbitrate."). Compare Distajo, Gingiss, and Subway with Kennamer, supra (concluding that, in an appeal from a district court judgment to a circuit court, a credit company had waived its right to arbitrate an issue after litigating the same issue in the district court). Jackson Key's conduct in pursuing its claim in the district court did not constitute a waiver of any right it may have to arbitrate a distinct claim brought against it in the circuit court. Jackson Key's litigating its claim regarding Microsoft Word in

13

the district court did not indicate an "intention to abandon," Companion Life, 670 So. 2d at 899, its alleged right to arbitrate the claim in the circuit court regarding the system performance of the MyWay software.

Because Jackson Key and Anderton did not substantially invoke the litigation process, we need not address the element of substantial prejudice. We conclude that the circuit court could not have properly denied the motion to compel arbitration on the ground that Jackson Key and Anderton had waived any right to arbitration they may have.

## II.  Issues Relating to the Scope of the Arbitration Provision

These issues concerns whether Jackson Key and Anderton, nonsignatories to the contract containing the arbitration provision, can compel arbitration of the dispute over the MyWay software.  "[G]enerally, a nonsignatory cannot compel arbitration." Ex parte Stripling, 694 So. 2d 1281, 1283-84 (Ala. 1997).  However, there are exceptions to this general rule.  Jackson Key and Anderton argue that they satisfy one of those exceptions -- the equitable-estoppel exception -- which allows a nonsignatory to enforce an arbitration provision under certain circumstances.  See Ex parte Stamey, 776 So. 2d

85, 89 (Ala. 2000) (allowing nonsignatories to enforce an arbitration provision if "(1) ... the scope of the arbitration agreement signed by the party resisting arbitration [is] broad enough to encompass those claims made by that party against nonsignatories, or [if] those claims [are] 'intimately founded in and intertwined with' the claims made by the party resisting arbitration against an entity that is a party to the contract, and (2) ... the description of the parties subject to the arbitration agreement [is] not ... so restrictive as to preclude arbitration by the party seeking it" (emphasis omitted)).

As a threshold issue, Jackson Key and Anderton argue that the arbitrator -- not the circuit court -- should decide whether the arbitration provision may be used to compel arbitration of the dispute here. This Court has explained the threshold issue of "who decides" the issue of "arbitrability":

> "In ruling on a motion to stay judicial proceedings following a request for arbitration, the court is required to decide matters of 'substantive arbitrability,' that is, (1) whether a valid agreement to arbitrate exists and, if so, (2) whether the specific dispute falls within the scope of that agreement. Dean Witter[ Reynolds, Inc. v. McDonald], 758 So. 2d [539,] 542 [(Ala. 1999)].

15

'Procedural arbitrability,' on the other hand, involves questions that grow out of the dispute and bear on its final disposition, e.g., defenses such as notice, laches, estoppel, and other similar compliance defenses; such questions are for an arbitrator to decide. See Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 84, 123 S. Ct. 588, 154 L. Ed. 2d 491 (2002) ('"'procedural' questions which grow out of the dispute and bear on its final disposition are presumptively not for the judge, but for an arbitrator, to decide"'); John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 84 S. Ct. 909, 11 L. Ed. 2d 898 (1964)(holding that an arbitrator should decide whether the steps of a grievance procedure were completed, where those steps were prerequisites to arbitration)."

Brasfield & Gorrie, L.L.C. v. Soho Partners, L.L.C., 35 So. 3d 601, 604-05 (Ala. 2009). To clarify, we note that the United States Supreme Court has referred to questions of "substantive arbitrability" as simply "questions of arbitrability" and questions of "procedural arbitrability" as "procedural questions." Howsam, 537 U.S. at 83. A court decides issues of substantive arbitrability "[u]nless the parties clearly and unmistakably provide otherwise." AT&T, 475 U.S. at 649.

The question whether an arbitration provision may be used to compel arbitration of a dispute between a nonsignatory and a signatory is a question of substantive arbitrability (or, under the Supreme Court's terminology, simply

1121417

"arbitrability").  In <u>First Options</u>, 514 U.S. at 943-46, the Supreme Court analyzed the question whether an arbitration agreement binds a nonsignatory as a question of arbitrability. See <u>also</u> <u>Howsam</u>, 537 U.S. at 84 (noting that in <u>First Options</u> the Supreme Court held that the question "whether the arbitration contract bound parties who did not sign the agreement" is a question of arbitrability for a court to decide).  More recently, the United States Court of Appeals for the Eighth Circuit succinctly addressed the threshold issue before us.  In <u>Eckert/Wordell Architects, Inc. v. FJM Properties of Willmar, LLC</u>, 756 F.3d 1098 (8th Cir. 2014), a nonsignatory sought to compel arbitration of a dispute with a signatory, as in this case.  The court stated:

> "Whether a particular arbitration provision may be used to compel arbitration between a signatory and a nonsignatory is a threshold question of arbitrability. <u>See</u> <u>Howsam v. Dean Witter Reynolds, Inc.</u>, 537 U.S. 79, 84-85, 123 S. Ct. 588, 154 L. Ed. 2d 491 (2002) (delineating potentially dispositive threshold issues between 'questions of arbitrability' and 'procedural questions').  We presume threshold questions of arbitrability are for a court to decide, unless there is clear and unmistakable evidence the parties intended to commit questions of arbitrability to an arbitrator. <u>Id.</u> at 83, 123 S. Ct. 588; <u>Express Scripts, Inc. v. Aegon Direct Mktg. Servs., Inc.</u>, 516 F.3d 695, 701 (8th Cir. 2008).  We have previously held the incorporation of the AAA Rules into a contract

17

requiring arbitration to be a clear and unmistakable indication the parties intended for the arbitrator to decide threshold questions of arbitrability. ... Eckert Wordell's drafting of the architectural services contract here to incorporate the AAA Rules requires the same result."

756 F.3d at 1100. See also Knowles v. Community Loans of America, Inc., (No. 12-0464-WS-B, Nov. 20, 2012) (S.D. Ala. 2012) (not reported in F. Supp. 2d) ("A question as to 'whether the arbitration contract bound parties who did not sign the agreement' is one that 'raises a "question of arbitrability" for a court to decide.'" (quoting Howsam, 537 U.S. at 84)).

Like the Eighth Circuit, we have held "that an arbitration provision that incorporates rules that provide for the arbitrator to decide issues of arbitrability clearly and unmistakably evidences the parties' intent to arbitrate the scope of the arbitration provision." CitiFinancial Corp. v. Peoples, 973 So. 2d 332, 340 (Ala. 2007). See also Joe Hudson Collision Ctr. v. Dymond, 40 So. 3d 704, 710 (Ala. 2009) (concluding that an arbitrator decides issues of substantive arbitrability when the arbitration provision incorporated the same AAA rule as in the present case); and Wells Fargo Bank, N.A. v. Chapman, 90 So. 3d 774, 783 (Ala. Civ. App. 2012)

18

(same). The relevant AAA rule incorporated by the arbitration provision provides: "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." Thus, although the question whether an arbitration provision may be used to compel arbitration between a signatory and a nonsignatory is a threshold question of arbitrability usually decided by the court, here that question has been delegated to the arbitrator. The arbitrator, not the court, must decide that threshold issue.

## Conclusion

Jackson Key and Anderton did not waive any right to arbitration they may have. The question whether Jackson Key and Anderton, as nonsignatories to the contract containing the arbitration provision, can compel arbitration of the dispute over the MyWay software is a question for the arbitrator, not the court, pursuant to the arbitration provision in the contract. The circuit court erred in denying Jackson Key and Anderton's motion to compel arbitration. We therefore reverse the order and remand the case for further proceedings consistent with this opinion.

1121417

REVERSED AND REMANDED.

Stuart, Bolin, Main, and Wise, JJ., concur.

Shaw, J., concurs in part and concurs in the result.

Moore, C.J., and Parker and Murdock, JJ., dissent.

1121417

SHAW, Justice (concurring in part and concurring in the result).

I concur as to Part I of the main opinion. As to Part II, I concur in the result.

The Practice-Monroeville, P.C. ("the Practice"), agreed that "any dispute or claim arising out of, or in connection with," the contract it entered into with Allscripts Healthcare, LLC ("Allscripts"), would be settled in arbitration under the rules of the American Arbitration Association. As part of that agreement, the Practice also agreed that issues of arbitrability, which include whether a nonsignatory to the contract can enforce the arbitration provision included in the agreement, would be decided by an arbitrator. See Eckert/Wordell Architects, Inc. v. FJM Props. of Willmar, LLC, 756 F.3d 1098 (8th Cir. 2014).

Eric Anderton and Jackson Key Practice Solutions, LLC, argue that their dispute with the Practice is a "dispute or claim" under the Practice's contract with Allscripts. The court must first perform a necessary "gate-keeping function" before compelling arbitration: it must determine whether the party resisting arbitration has agreed in its contract to

21

1121417

allow the arbitrator to decide whether a nonsignatory to the contract can enforce its arbitration provision. Here, it is the function of the court to determine whether the Practice agreed that an arbitrator could decide whether Anderton and Jackson Key could take their claims against the Practice to arbitration. The Practice has the freedom to enter into a contract that calls for the arbitrator, instead of the trial court, to make this decision.

1121417

MURDOCK, Justice (dissenting).

It is axiomatic that, before a party to a dispute must submit to the views of some arbitrator as to either the merits of the dispute or whether the subject of the dispute falls within the scope of disputes to be decided on the merits by the arbitrator, a court must first determine whether that arbitration agreement is in fact one that governs as between that party and the opposing party to the dispute. By logic and of necessity, only a court can play this gate-keeping function.[3] Were it otherwise, then, by logical extension, any party to any dispute could insist on appearing before an arbitrator, and the opposing party, even one who in fact has never signed as a party to an arbitration agreement and who

---

[3]See, e.g., Smith v. Mark Dodge, Inc., 934 So. 2d 375, (Ala. 2006). Smith v. Mark Dodge was a case postured just like the present case, i.e., where a nonsignatory sought to force a signatory into arbitration under the terms of an arbitration agreement containing a clause expressing an "agree[ment] to arbitrate the arbitrability of any controversy." This Court made the decision whether the arbitration agreement governed as between two parties on the basis of the same equitable-estoppel theory asserted in the present case. 934 So. 2d at 379, 380-84. A separate dispute as to whether the subject matter of the dispute fell within the intended scope of the arbitration agreement was sent to the arbitrator for decision under the same "arbitrate-the-arbitrability" clause. Id. at 378-80.

23

otherwise is not properly governed by any arbitration agreement under applicable legal principles, nonetheless will be subjected to the decision of an arbitrator as to whether this is in fact true or not. Until such a condition is determined to be true, however, no party is, or should be, under any obligation to appear before, or to subject himself or herself to the authority of, some arbitrator, rather than a court.[4]

---

[4]If, as suggested by the main opinion, the recent decision of the United States Court of Appeals for the Eighth Circuit in Eckert/Wordell Architects, Inc. v. FJM Properties of Willmar, LLC, 756 F.3d 1098, 1098 (8th Cir. 2014), is to the contrary, then, in all logic and necessity, I respectfully submit that it was decided in error. In point of fact, the opinion in Eckert offers no meaningful exploration of the issue before us. In a relatively short paragraph, a three-judge panel limits the analysis in that case to the narrow issue whether, as a matter of contractual form, the reference to American Arbitration Association rules in an arbitration agreement would satisfy the requirement announced by the Supreme Court in Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83 (2002), that there must be "a clear and unmistakable indication" in the written contract containing the arbitration provision that the arbitrator is to decide the scope of the arbitration agreement. After identifying this as the issue to be addressed by it, the panel cites a single Eighth Circuit case as precedent for an affirmative answer and then ends the opinion. 756 F.3d at 1100.

At least one law review article has highlighted why there may be confusion on this issue: the use of the term "arbitrability" for two separate ideas. As the author explains:

_____

"Whether a party is required to submit a particular dispute to arbitration may contain within it two completely distinct legal issues. First, a party may be objecting to arbitration on the ground that <u>no valid, enforceable arbitration agreement exists between the parties</u>. Second, and alternatively, a party may be arguing that <u>the particular dispute does not fall within the scope of the arbitration agreement</u>. The distinction between these two objections to arbitration is critical, because each is governed by its own separate set of legal rules that govern 'who,' meaning which forum -- the court or the arbitrator -- is to adjudicate such objection to arbitration.

"Courts repeatedly recognize that the issue of who has the jurisdiction to decide the 'question of arbitrability' is a threshold issue. However, the use of the term 'arbitrability' in the framing of this question has introduced and is the source of substantial confusion. This is because the term 'arbitrability,' as used by courts and commentators alike, can refer to both of the two above-noted very different objections to arbitration."

Steven H. Reisberg, <u>The Rules Governing Who Decides Jurisdictional Issues:</u> First Options v. Kaplan <u>Revisited</u>, 20 Am. Rev. Int'l Arb. 159, 159 (2009).

One federal court not confused about the issue has put it this way: "The existence of an agreement to arbitrate is paramount. ... Once the existence of an agreement is established, courts turn to the question of the 'scope' of the arbitration agreement, <u>unless</u> the parties have 'clearly and unmistakeably' delegated the issue of 'scope' to an arbitrator." <u>Sleeper Farms v. Agway, Inc.</u>, 211 F. Supp. 2d 197, 200 (D. Me. 2002) aff'd, 506 F.3d 98 (1st Cir. 2007). "Thus, <u>if the Court finds that an agreement to arbitrate exists between the parties</u>, it will leave the second arbitrability question to an arbitrator." 211 F. Supp. 2d at 200 (emphasis added).

1121417

On an even more fundamental level, however, I would add that today's case is a corollary and natural successor to this Court's decision in Auto Owners Insurance, Inc. v. Blackmon Insurance Agency, Inc., 99 So. 3d 1193 (Ala. 2012). The comments in my dissent in that case, 99 So. 2d at 1199-1203, are equally applicable to the similar question in this case, and I incorporate them herein by this reference.

As I concluded in Auto Owners, this Court's approach to "traditional" arbitrability cases, i.e., those concerning the substantive scope of an arbitration clause, is "paradoxical." 99 So. 3d at 1201. Specifically, I considered the typical case, by which I meant a case where the arbitration clause does not describe a universe of types of disputes whose merits are to be arbitrated that is any narrower than the universe of types of disputes within which the arbitrator is to decide if the particular dispute is of a type whose merits are to be arbitrated. 99 So. 3d at 1201-02. In such cases, there logically is no room for decision by the arbitrator -- or, as I put it in Auto Owners, we "meet ourselves coming" -- on the threshold question whether the arbitration agreement in question governs as to the subject matter of the dispute (the

26

question in <u>Auto Owners</u>). It is <u>the court</u> that of necessity must answer the threshold question of whether the dispute falls within the universe of cases as to which the arbitrator is to decide the question of arbitrability because, until the court does so, and does so in the affirmative, it has no basis to send the case to the arbitrator for any purpose. Once it does so, however, the parameters of the universe of cases in question have been decided and there logically is no room left for the arbitrator to define this universe any differently. <u>Id.</u> at 1201, 1203. "Paradoxically," if the arbitrator were to take a more narrow view of the universe of cases subject to arbitration on the merits so as, in turn, to find that the particular dispute before the arbitrator does not fall within that universe, then the arbitrator will have made a decision that conflicts with the view of that universe held by the court that sent the case to the arbitrator and of necessity deprives the arbitrator of the authority to make that decision in the first place. The same would be true in all cases in which the threshold question is whether the arbitration

agreement is one that governs as between the parties in question -- the question in the present case.[5]

---

[5]Since this Court's decision in <u>Auto Owners</u>, it has come to my attention that the views I expressed therein are embodied in writings by other commentators and courts, some of whom frame their criticism of the subject approach to "arbitrability" in terms of a "circularity" of reasoning.

> "[A]ttempts to find a source of arbitral power in the rules of arbitral institutions alone must be circular. For example, the [Interstate Commerce Commission's] practice of referring cases to arbitration once the Court of Arbitration is 'prima facie satisfied' that an arbitration agreement 'may exist' is undoubtedly 'a useful administrative line for an institution's bureaucracy, but such a standard in itself says nothing about the true presence of consent.' Whatever may be the 'true construction' of the institution's rules 'as they stand without reference to any particular system of law,' no rational regime of contract law could countenance that an arbitrator arrogate to himself the power to determine his own jurisdiction in the absence of a valid agreement giving him the authority to do so. A functional analysis is possible in terms of our desire not to see a matter entrusted to arbitrators whose own self-interest is likely to skew the result. But the prevention of bootstrapping alone provides an adequate account."

Alan Scott Rau, <u>The Arbitrability Question Itself</u>, 10 Am. Rev. Int'l Arb. 287, 304-06 (1999) (footnotes omitted). See <u>Sphere Drake Ins. Ltd. v. All Am. Ins. Co.</u>, 256 F.3d 587, 591 (7th Cir. 2001) ("[A] person who has not consented ... can't be packed off to a private forum. Courts have jurisdiction to determine their jurisdiction not only out of necessity (how else would jurisdictional disputes be resolved?) but also because their authority depends on statutes rather than the parties' permission. Arbitrators lack a comparable authority to determine their own authority because there is a

non-circular alternative (the judiciary) and because the parties do control the existence and limits of an arbitrator's power. No contract, no power.").   See also, e.g., <u>China Minmetals Materials Imp. & Exp. Co. v. Chi Mei Corp.</u>, 334 F.3d 274, 288 (3d Cir. 2003) (reasoning that "a contract cannot give an arbitral body any power, much less the power to determine its own jurisdiction, if the parties never entered into it").  Cf. <u>Matterhorn, Inc. v. NCR Corp.</u>, 763 F.2d 866, 869 (7th Cir. 1985) ("There would however be a severe problem of bootstrapping if a party to a contract could be forced to arbitrate the question whether he had been coerced or deceived into agreeing to arbitrate disputes arising under the contract.").